No. 76.—GEORGE W. SCATTERGOOD, for the use, &c. plaintiff in error, vs. ROBERT FINDLAY, defendant.

[1.] Where the law has been properly charged by the Court, and the verdict is not contrary to the evidence, but in accordance with the judgment, will not be disturbed.

Assumpsit, in Bibb. Tried before Judge POWERS, May Term, 1856.

An action was brought in the name of George W. Scattergood for the use of Scott, Carhart & Co. against Robert Findlay, upon the following draft or order:

"Macon, 12th December, 1851.
*Mess. R. K. & J. B. Hines:*
    Please pay to G. W. Scattergood two hundred dollars on account of claims in your hands belonging to me.
                    ROBERT FINDLAY."
"Accepted when in funds.
                    R. K. & J. B. HINES."

Upon the trial, the plaintiff introduced in evidence the original draft, of which the above is a copy; and also, a notarial letter showing that on the 27th January, 1854, demand of payment of said order was made on John B. Hines, surviving partner of R. K. & J. B. Hines, late of Macon, which was refused, saying "no funds in hand nor ever have been in hands, of said John B. Hines." And notice of said demand and refusal was on same day given by mail in a letter addressed to Robert Findlay, Macon. There was a recital therein that the same "was done at the request of George W. Scattergood."

JOHN B. STOWE, under commission, testified, that he presented the order to R. K. Hines, of the firm aforesaid, during his lifetime, and he replied that they were not in funds at the time, but would inform him when the money was realized;

never admitted to him that they were in funds. The order was received from George W. Scattergood by Scott, Carhart & Co. in part payment for lands sold by them to said Scattergood. Witness does not know the date of the insolvency of R. K. & J. B. Hines, and the order came into the hands of said users before witness knew of such insolvency; does not know what the intention of the drawer of the order was.

E. J. Johnson testified, that Robert Findlay and George W. Scattergood, about the time of the date of the order, bought four lots in Macon from the plaintiffs for $500; that Scattergood had arranged the 2d and 3d payments and this order was, as he understood, for the first cash payment, and that they went to the office of Hines & Hines to arrange it; that Hines & Hines were agents of Scott, Carhart & Co. in the sale of the said lots, four of which were bought by Scattergood & Findlay.

George W. Scattergood testified, that he and defendant bought four lots of plaintiff's users for $500, as stated. There were to be three payments—first, cash; balance in one or two years; went to Hines & Hines' office to arrange the matter; witness and Findlay gave their notes for the 2d and 3d payments and took bond for titles. Findlay proposed to witness to arrange the cash payment, stating that the Hines' had money in their hands collected belonging to him; and he, Findlay, did then arrange with said Hines for the first cash payment, which was for $200, said Hines remarking that it was all right; witness never saw the order sued on, nor received any money on it; that it never was delivered to him nor in his possession, and he knows nothing about it; the Hines' acted in the matter as the agents of Scott, Carhart and Co.; the protest was done without witness' authority or knowledge; does not recollect distinctly what passed between Hines and Findlay; thinks a draft was drawn by Findlay on Hines & Hines on account of funds collected by them for him.

P. M. Nightengale testified, he was indebted to defendant by note in the sum of $239 90. The same was paid to

the law firm of R. K. & J. B. Hines; but being paid by the agent of witness, he does not know to which one of the firm; the money was paid December 5th, 1850.

After the evidence closed, the Court, among other things, charged the Jury—

1st. That if they believed the draft was drawn by Findlay and accepted conditionally by Hines & Hines, Findlay should have had notice of such conditional acceptance in a reasonable time, and if it was not given, he was not liable.

2d. That when the draft was presented to Hines and he replied that he was not in funds, Findlay was entitled to notice of this refusal; and that if it was not given, Findlay was discharged, and you will inquire from the evidence whether Findlay had notice.

3d. If the Jury believe that R. K. Hines was the agent of the plaintiff and admitted that he had settled the matter contemporaneously with the act done, then the plaintiffs are bound by his act and admission, and it is a satisfaction of the case, if you believe he actually did receive the draft of $200 as cash.

Counsel for plaintiff excepted to these instructions and assign the same as error.

Poe & Grier, for plaintiff in error.

Stubbs & Hill, *contra.*

*By the Court.*—Lumpkin, J. delivering opinion.

[1.] The plaintiff has declared on this instrument as a draft or bill of exchange, and not as a contract. He alleges in his writ no consideration, but treats it as importing one—as a commercial paper. Can he deny it? If so, and his objection to it be good, he must go out of Court; for his writ is fatally defective for the reason stated.

But we think plaintiff's Counsel took the right view of the nature of this paper, when he sued on it.

Findlay draws on the Messrs. Hines for $200, on account of claims in their hands. It is not necessarily to be inferred that the payment was restricted to this fund and no other; and that was contingent on their collection. But these are technical difficulties. The main question being, was the transaction between Scattergood, Findlay & Hines, as the agent of Scott, Carhart & Co. a payment? The Jury, under a proper charge from the Court as to the law, have found. that it was, and we are satisfied with the verdict.